IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| ANTHONY BLACKWELL )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GILES CO. JAIL )<br>)<br>Defendants. ) | No. 1:14-cv-00156<br>Senior Judge Haynes |

**MEMORANDUM**

Plaintiff, Anthony Blackwell, an inmate at the Giles County Jail in Pulaski, Tennessee, filed this pro se action under 42 U.S.C. § 1983 against Defendants Giles County Jail and corrections officer Joshua Haggard, in his individual capacity. Plaintiff asserts Fourteenth Amendment claims for the Defendants' alleged failure to protect and their deliberate indifference to Plaintiff's serious physical and mental needs. Plaintiff alleges that he was assaulted twice by fellow inmates at the jail and during the second assault, Defendant Haggard knew that Plaintiff's assailant intended to assault Plaintiff and allowed the assault to happen. Plaintiff further alleges that he experienced dizziness and blurred vision after the second assault, but was not taken to the hospital until the next night. Plaintiff also alleges that he has received mental health treatment only once since arriving at the jail.

Before the Court is Defendants' motion for summary judgment (Docket Entry No. 22), contending: (1) that Defendant Haggard is entitled to qualified immunity because Plaintiff's proof cannot establish that Haggard was deliberately indifferent to Plaintiff's health or safety; (2) that Giles County, a jail, is not an entity subject to an action under § 1983; and (3) that even if there were a constitutional violation, the Giles County Jail is not liable for lack of any alleged violation due to its policy or custom. Plaintiff filed a letter that he is unable to respond. (Docket Entry No. 29).

For the reasons set forth below, the Court concludes that Defendants' motion for summary judgment should be granted except as to Plaintiff's failure-to-protect claim against Defendant Haggard for the second assault. The Court concludes that Defendant Haggard is not entitled to qualified immunity for the second assault because a genuine dispute of material fact exists as to whether Haggard was aware of a substantial risk of harm to Plaintiff and that he acted with deliberate indifference to Plaintiff's safety by failing to protect Plaintiff from that risk of harm.

**A. Review of the Record**[1]

On April 14, 2014, Plaintiff was transferred to Giles County Jail where he is awaiting trial. (Docket Entry No. 23, Defendants' Statement of Undisputed Material Facts, at ¶ 1, 3). Giles County operates the Giles County Jail. Id. at ¶¶ 2, 38. Within their first year of employment, all corrections officers must complete forty hours of basic training that includes training on jail policies, self-defense, and medical and first aid. Id. at ¶ 52.

The jail policy for "Classification of Inmates" provides that inmates are classified into groups of minimum, medium, or maximum security and assigned a housing area most appropriate for their security and safety based on criteria such as criminal history, assaultive felonies, felony convictions, escape history, institutional behavior problems, pending charges, and other special conditions such as medical conditions and protective custody. Id. at ¶¶ 38-40.

The jail policy for "Health Care Services" states that inmates will be provided access to appropriate health care services for their physical and emotional health. Id. at ¶¶ 38, 41. According

---

[1]Defendants filed contemporaneously with their motion for summary judgment a statement of undisputed material facts, (Docket Entry No. 23), in accordance with Local Rule 56.01(b). Plaintiff does not dispute Defendants' statement of undisputed facts, but the Court concludes that the under the applicable law, Defendants' proffered statements of fact do not warrant an award of summary judgment.

to the policy, jail employees will not take any deliberate action designed to block, deny, or delay access of an inmate to health care services. Id. at ¶ 45. When inmates are processed into the jail, they are advised of the procedure for requesting medical care by using a kiosk that is available daily to submit an inmate request form for services. Id. at ¶¶ 42-43. Inmates requesting mental health services are evaluated by the jail nurse and referred for other services as needed. Id. at ¶ 44.

At booking, Plaintiff was classified in protective custody, outside the general jail population, and placed in "F Pod" due to the nature of his charges, aggravated rape of a child. Id. at ¶¶ 1, 4-5. During Plaintiff's first night in the Giles County Jail, two unknown inmates broke into Plaintiff's cell and assaulted him. Id. at ¶ 6. Plaintiff attributes the assault to the nature of his charges. Id. at ¶ 7. Plaintiff did not tell anyone about the incident, nor report the assault to jail staff, nor ask to be moved, nor request medical treatment. Id. at ¶¶ 8-11. Plaintiff assents that jail staff was unaware of the assault. Id. at ¶ 12.

About a week and a half prior to October 22, 2014, Plaintiff met fellow inmate Joshua Cates in F Pod. Id. at ¶ 14. Plaintiff and Cates did not have any problems at that time, but later had a non-physical argument. Id. at ¶¶ 15-18. Plaintiff did not report any problems with Cates and did not request separation or protection from Cates. Id. at ¶¶ 18-20, 36.

On October 22, 2014, Plaintiff was returning from the shower when he heard Cates arguing with Defendant Haggard about being put on disciplinary lockdown. Id. at ¶ 22. Plaintiff was also to be placed on lockdown for tattoo needles inside his cell. Id. at ¶ 23. Cates was placed on lockdown in a cell with Plaintiff. Id. at ¶ 24. Plaintiff saw Cates in his cell, but was not concerned. Id. at ¶ 25. Yet, in his deposition, Plaintiff testified that he heard Cates say, "don't put him (Plaintiff) in there (the cell)," (Docket Entry No. 26, Blackwell Dep., at 66:2-66:6), and, "if I walked in the cell he

3

(Cates) was going to fire on me, whatever that means," id. at 66:23-66:25.

Plaintiff walked into the cell and asked Haggard why he was being put on lockdown. (Docket Entry No. 23 at ¶ 26). Cates said nothing to Plaintiff before Cates struck Plaintiff several times in the head. Id. at ¶¶ 26-27. Haggard called for help during the altercation, and other officers arrived to remove Cates from the cell. Id. at ¶ 28. Plaintiff declined to press charges or file a grievance against Cates and did not request medical treatment at that time. Id. at ¶¶ 29-30, 36.

At 12:30 a.m. on October 23, 2014, Plaintiff stated that he felt dizziness and head pain. Id. at ¶ 31. Plaintiff was taken to a medical observation cell where Plaintiff was given an ice pack, but refused to take ibuprofen. Id. at ¶ 32. The jail nurse later examined Plaintiff and recommended that Plaintiff go to the hospital for evaluation. Id. at ¶ 33.

At approximately 10:55 p.m. on October 23, 2014, a member of jail staff took Plaintiff to Southern Regional Hospital for evaluation. Id. at ¶ 34. Plaintiff was diagnosed with a mild concussion and prescribed Tylenol and ibuprofen. Id. at ¶ 35. After the Cates incident, Plaintiff submitted multiple requests for medical treatment regarding headaches through the kiosk. Id. at ¶ 46. In response to Plaintiff's requests, Plaintiff was given Tylenol and ibuprofen, and later was taken to the hospital for a CAT scan. Id. at ¶ 47.

The jail nurse also referred Plaintiff to Centerstone for treatment for paranoid schizophrenia, manic depression, and ADHD. Id. at ¶ 48. According to Defendants, Plaintiff has been to Centerstone on multiple occassions. Id. Plaintiff was not taking medication for his mental health before arriving at the jail, but now receives daily medication that stabilizes his mood. Id. at ¶¶ 49-50. Jail records reflect that Plaintiff went to Centerstone four times before September 19, 2014, including two times for a court ordered mental evaluation. (Docket Entry No. 25, attachment thereto,

Exhibit B at 23).

## B. Conclusions of Law

Summary judgment is only appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). The opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Where, as here, the non-moving party does not formally oppose the motion for summary judgment, a court "may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(3).

For his § 1983 claim, Plaintiff "must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." Burley v. Gagacki, 729 F.3d 610, 619 (6th Cir. 2013). Local governments are subject to a § 1983 action. Monell v. Dept. of Soc. Servs. of the City of New York, 436 U.S. 658, 690 (1978).

As to Defendant Haggard's qualified immunity defense, "[t]he doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In Pearson, the Supreme Court clarified that the two-prong test for qualified

5

immunity requires Plaintiff to show that: (1) based upon the applicable law, the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred, and (2) the violation involved a clearly established constitutional right of which a reasonable person would have known. See Brown v. Lewis, 779 F.3d 401, 411-12 (6th Cir. 2015) (internal quotations omitted). "The court may address these prongs in any order, and if the plaintiff cannot make both showings, the officer is entitled to qualified immunity." Id. at 412 (citing Pearson, 555 U.S. at 236).

The Due Process Clause of the Fourteenth Amendment entitles pretrial detainees to "the same Eighth Amendment rights as [] other inmates." Daniels v. Woodside, 396 F.3d 730, 735 (6th Cir. 2005) (citing Thompson v. Cnty. of Medina, Ohio, 29 F.3d 238, 242 (6th Cir. 1994)). "The Eighth Amendment's proscription of cruel and unusual punishment is violated by 'deliberate indifference to serious medical needs of prisoners.'" City of Revere v. Mass. Gen. Hosp., 463 U.S. 238, 243-44 (quoting Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)). This includes the right to protection from violence at the hands of other inmates. Farmer v. Brennan, 511 U.S. 825, 833 (1970) (citing Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir. 1988)). This also includes the right to adequate medical care. City of Revere, 463 U.S. at 244-46. The Sixth Circuit applies substantially similar standards to claims for failure to protect and failure to provide adequate medical care, based on the Eighth Amendment deliberate indifference standard. Amick v. Ohio Dep't of Rehab. & Corr., 521 Fed.Appx 354, 361 (6th Cir. 2013).

The failure to protect an inmate from violence by other inmates rises to the level of a constitutional violation where both objective and subjective requirements are met. Bishop v. Hackel, 636 F.3d 757, 766 (6th Cir. 2011) (citing Farmer, 511 U.S. at 834). The objective component is satisfied where an inmate proves that "the failure to protect from risk of harm is objectively

'sufficiently serious.' The inmate must show that 'he is incarcerated under conditions positing a substantial risk of serious harm.'" Id. (quoting Farmer, 511 U.S. at 833). The subjective component requires an inmate to prove that a prison official "acted with 'deliberate indifference' to inmate health or safety." Id. (quoting Farmer, 511 U.S. at 834). In the context of protection from other inmates, deliberate indifference is the knowing disregard of "an excessive risk to inmate healthy or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." Id. at 766-67 (quoting Farmer, 511 U.S. at 837). For qualified immunity purposes, "an inmate's right to be free from prison violence [was] clearly established" at the time of the alleged constitutional violations. Id., 636 F.3d at 766 (citing Sixth Circuit cases clearly establishing this right).

Here, for the first assault, two inmates entered Plaintiff's cell and assaulted him on his first night in Giles County Jail. Plaintiff does not present facts that Haggard had any personal connection to the first assault. Thus, the Court concludes that Defendant Haggard did not act with deliberate indifference and is entitled to summary judgment on the first assault. See Gibson v. Matthews, 926 F.2d 532, 535 (6th Cir. 1991) ("[P]ersonal liability on any of the defendants . . . must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others . . . .").

As to Plaintiff's claim that Defendant Haggard failed to protect Plaintiff from the Cates assault, Plaintiff was classified in protective custody and did not report any problems with Cates prior to the altercation. (Docket Entry No. 23 at ¶¶ 4, 19). Plaintiff was also unconcerned about seeing Cates in his cell. Id. at ¶ 25.

Because Plaintiff filed a verified complaint, "his allegations 'have the same force and effect

as an affidavit' for purposes of responding to a motion for summary judgment." Lavado v. Keohane, 992 F.2d 601, 605 (6th Cir. 1993) (quoting Williams v. Browman, 981 F.2d 901, 902 (6th Cir. 1992)). Plaintiff asserts that Cates was placed in the same cell as Plaintiff, and told the guard several times that Cates was going to assault Plaintiff. (Docket Entry No. 1, Complaint, at 5). Plaintiff also asserts that Defendant Haggard "still told me to go in there (the cell)," and that Cates then assaulted Plaintiff. Id.

Plaintiff testified in his deposition that Cates was arguing with Haggard when Plaintiff came out of the shower. (Docket Entry No. 26, at 35:6-35:20). Plaintiff testified in his deposition that he heard Cates say, "don't put him (Plaintiff) in there (the cell)," id. at 66:2-66:6, and, "if I walked in the cell he (Cates) was going to fire on me, whatever that means," id. at 66:23-66:25. Plaintiff further testified that he "told [Haggard] I didn't want to [go in the cell], but [Haggard] told me to go in there anyway." Id. at 67:7-67:10. To be sure, Plaintiff seems to contradict this testimony elsewhere in the deposition by stating that he only heard through hearsay from other inmates that Cates told Haggard that Cates was going to assault Plaintiff. See id. at 37:15-37:20. Yet, that contradiction goes to Plaintiff's credibility as Plaintiff's verified complaint and deposition testimony establishes an issue of fact as to Haggard's knowledge that Cates was going to assault Plaintiff.

Viewing the evidence in the light most favorable to Plaintiff, a reasonable factfinder could infer that Cates made statements to Haggard that made Haggard aware of a substantial risk to Plaintiff and that Haggard disregarded that risk by telling Plaintiff to go in the cell. These allegations raise an issue of fact as to whether Plaintiff's alleged mistreatment was objectively serious and as to whether Haggard subjectively ignored the risk to Plaintiff's safety. Thus, based on Plaintiff's verified complaint and deposition, the Court concludes that there is a disputed issue of material fact

as to whether Cates told Haggard he was going to assault Plaintiff and whether Haggard told Plaintiff to go in the cell. The Court concludes that Defendant Haggard is not entitled to qualified immunity from Plaintiff's claim that Defendant Haggard failed to protect Plaintiff from the Cates assault, and summary judgment is therefore inappropriate.

As to Plaintiff's claims for failure to provide adequate medical care, Plaintiff must prove that a risk of harm existed that is objectively serious. Farmer, 511 U.S. at 833-34. In addition, Plaintiff must prove a "sufficiently culpable state of mind" that can be satisfied by showing the Defendant's deliberate indifference to a serious medical need. McCarthy v. Place, 313 F. Appx. 810, 813-14 (6th Cir. 2008) (quoting Blackmore v. Kalamazoo Cnty., 390 F. 3d 890, 895 (6th Cir. 2004)). In the context of medical treatment, deliberate indifference is the disregard of a known risk of serious harm. Id. at 814 (citing Farmer, 511 U.S. at 837). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." Graham ex rel. Estate of Graham v. Cnty. of Washtenaw, 358 F.3d 377, 385 (6th Cir. 2004) (quoting Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Yet even where a defendant has administered some medical treatment, deliberate indifference may be established where a plaintiff can show "grossly inadequate care" or prove that a defendant made a "decision to take an easier but less efficacious course of treatment." McCarthy, 313 Fed. Appx. at 815 (citing Terrance v. Northville Reg'l Psychiatric Hosp., 286 F.3d 834, 843 (6th Cir. 2002)).

Here, Plaintiff's claim is that the jail staff did not take Plaintiff to the hospital until the night after Cates assaulted Plaintiff. The undisputed facts reflect that Defendant Haggard called for help while Cates was hitting Plaintiff in the cell, guards removed Cates and Plaintiff from the cell, and

Plaintiff did not ask for medical treatment at that time. Plaintiff's testimony is that only later did he experience dizziness and blurred vision. When Plaintiff told jail staff of his dizziness and head pain, Plaintiff was taken to a medical observation cell, was given an ice pack and declined to take ibuprofen. The next day, the nurse recommended that Plaintiff go to the hospital. On these facts, the Court concludes that Plaintiff has failed to show that Defendants had the sufficiently culpable state of mind of deliberate indifference to Plaintiff's medical concerns.

For his mental health claim, the undisputed facts are that Plaintiff has paranoid schizophrenia, manic depression, and ADHD. Plaintiff's medical records show that Plaintiff went to Centerstone four times before filing his complaint, including two visits for a court ordered mental evaluation. The undisputed facts further show that Plaintiff receives medication daily that stabilized his mood. Thus, the Court concludes that Plaintiff has been provided with adequate mental health care and cannot prove any deliberate indifference by Defendants to his mental health concerns.

Plaintiff also names Giles County Jail as a defendant to this action. To state a claim under § 1983, a plaintiff must allege a deprivation of legal or constitutional rights "caused by a person acting under color of state law." Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003) (emphasis added) (citations omitted); 42 U.S.C. § 1983. A county jail is not a legal entity subject to suit under § 1983. Watson v. Gill, 40 Fed.Appx. 88, 89 (6th Cir. 2002); Travis v. Clinton Cnty. Jail, No. 1:10-cv-1276, 2011 WL 447000, at *2 (W.D. Mich. Feb. 4, 2011) (citations omitted) ("The jail is a building, not an entity capable of being sued in its own right."). Thus, the Court concludes that Defendants' motion for summary judgment should be granted as to Giles County Jail.

Even if the Court construes Plaintiff's claim to be against Giles County, for a county to be held liable under § 1983, "there must be execution of a government's policy or custom which results

in a constitutional tort." Gregory v. Shelby Cnty., Tenn., 220 F.3d 433, 441 (6th Cir. 2000) (citing Monell, 436 U.S. at 694). Here, Plaintiff has not demonstrated an underlying constitutional violation regarding his medical needs. Plaintiff also has not proved that any policy or custom of Giles County resulted in Defendant Haggard failing to protect Plaintiff from the assault by Cates. The undisputed facts show that the jail has a policy for classification of inmates, and Plaintiff was classified in protective custody outside the general jail population due to the nature of his charges. Thus, the Court concludes that Plaintiff has failed to show that a jail policy or custom resulted in a constitutional tort and Plaintiff fails to state a claim against Giles County under § 1983.

Accordingly, for these reasons, Defendants' motion for summary judgment (Docket Entry No. 22) should be granted in part and denied in part..

An appropriate Order is filed herewith.

ENTERED this the 9th day of December, 2015.

WILLIAM J. HAYNES, JR.
Senior United States District Judge